WILLIAM W. VERNON, appellant,

*v.*

WILLIAM VERNON, respondent.

[Decided July 11th, 1905.]

1. A writing admitted to probate was in the form of a letter, and expressed a disposition of property after death, and was called therein a last will and testament.—*Held*, that if the paper was executed in the manner required by our statute it may be probated as a valid will and testament.

2. When there is no attestation clause the proponent of a writing, claimed to be a will, must affirmatively prove all the statutory requisites, including that of publication, which is the declaration by the testator that the writing is his last will.

3. Publication may be made by words, or acts or signs, which clearly make known to the witnesses that what they are requested to attest is the testator's will.

4. The evidence before the orphans court justified the inference that the publication was made.

On appeal from a decree of the Morris county orphans court.

*Mr. King Stickle Oram,* for the appellant.

*Mr. Philander B. Pierson,* for the respondent.

MAGIE, ORDINARY.

The paper-writing admitted to probate by the decree appealed from is in the form of a letter addressed by Sarah B. Vernon to her brother, William Vernon, the respondent. It plainly expresses an intended disposition of property after death, and is stated therein to be her "last will and testament." It does not admit of doubt that if this paper was executed as required by our statute of wills, it may be probated as a valid testament. On this point no contest is raised by the appellant.

The writing in question has appended to it the signature "Sarah B. Vernon." Below that signature, on the left, are the words "Signed by Florence K. Howland, Elizabeth Dunn." The usual attestation clause is absent.

The proofs taken before the orphans court show that Sarah B. Vernon and Elizabeth Dunn are both dead. The evidence of Florence K. Howland, the only survivor of the three, was taken in a foreign state, under a commission and interrogatories. From her evidence it is established that the signature of Sarah B. Vernon was made by her in the presence of both Florence K. Howland and Elizabeth Dunn, and that they immediately thereafter signed their names thereto in the presence of Sarah B. Vernon and of each other, and at the request of Sarah B. Vernon. There is no room for contest or doubt that the writing in question was executed and witnessed with the formalities requisite to constitute it a valid will under our statute if there is proof that the intending testatrix "declared" it to be her "last will" in the presence of the two persons who signed after her as witnesses.

The sole contention of appellant is that the evidence fails to establish that essential fact.

When there is no attestation clause, the proponent of the writ-

ing claimed to be a will must affirmatively prove all the statutory requisites, including that of publication, which is the declaration by the testator that the writing is his last will. *Mundy v. Mundy, 15 N. J. Eq. (2 McCart.) 290; Swain v. Edmunds, 53 N. J. Eq. (8 Dick.) 142; S. C., 54 N. J. Eq. (9 Dick.) 438.*

Publication may be made by words,. or acts or signs, which clearly and distinctly make known to the witnesses that what they are requested to subscribe to is the testator's will. *Robbins v. Robbins, 50 N. J. Eq. (5 Dick.) 742; Swain v. Edmunds, ubi supra.*

The insistment of appellant is that the evidence of Florence K. Howland does not establish a declaration by the testatrix that the paper-writing was her will. The pertinent evidence is the following:

"*Interrogatory the 9th.*—At the time Sarah B. Vernon asked you to witness this paper-writing, did she tell you that the paper was her last will and testament?

"*A.* I think she did; I shouldn't have signed it unless she had done so.

"*Cross Interrogatory 15th.*—

"(a) Did Miss Vernon say it was her will?

"(b) To whom, if to anyone, did Sarah B. Vernon say it was her last will?

"*A.* (a) I cannot be certain, but I think she did.

"*A.* (b) To my best recollection, to Miss Dunn and myself.

"*Cross Interrogatory 16th.*—At the time you signed this paper, did you know it was the will of the said Sarah B. Vernon?

"*A.* I supposed it to be so; didn't read the paper, of course.

"*17th.*—How did you know it was her will?

"*A.* Only from what she, Miss Vernon, said.

"*18th.*—At the time of the signing of this paper, did Elizabeth Dunn know it was the will of the said Sarah B. Vernon?

"*A.* No doubt she did.

"*19th.*—How did she know it was her will?

"*A.* In the same way that I did.

"*22d.*—Did Sarah B. Vernon tell Elizabeth Dunn that this paper was the last will and testament of the said Sarah B. Vernon?

"*A.* I feel very sure that she told her.

"*23d.*—Did you hear the said Sarah B. Vernon tell Elizabeth Dunn that this paper was her last will and testament?

"*A.* I do not recollect the words, but I feel sure she was so informed."

The criticism of counsel is that the witness fails to inform the court what language Sarah B. Vernon used to convey to the

witnesses' mind the idea that the paper they were requested to-
sign was a will, but the witness declares that to her best recol-
lection testatrix said it was her last will to Miss Dunn and her-
self, and that she supposed it to be testatrix's will from what.
testatrix said. This is sufficient proof of some words used by
testatrix from which this witness knew that it was testatrix's
will, although the witness had not read the paper.

The information thus transmitted was a sufficient indication.
of the publication of the paper as a will. The best recollection
of a witness is sufficient to establish a fact coming within the-
witness' observation and hearing, and when that fact was the-
use of words by a testatrix from which the witness knew that.
the paper which she and Miss Dunn were requested to sign was-
a will, it is sufficient to establish it as a will.

The decree appealed from must therefore be affirmed.